**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**FAYETTEVILLE DIVISION**

**MONTY WILMOTH**                                                                 **PETITIONER**

**V.**                              **No.  5:10-CV-05210**

**RAY HOBBS, Director**
**Arkansas Department of Correction**                                       **RESPONDENT**

## REPORT AND RECOMMENDATION

Before the undersigned for report and recommendation is the petitioner's Habeas Corpus

Petitions (ECF No. 1) filed November 1, 2010 under 28 U.S.C. Section 2254.  The State filed its

Response (ECF No. 8) on December 1, 2010 and the Petitioner  filed his Reply (ECF No. 6 ) on

January 6, 2011 and an Amended Reply (ECF No. 12) on January 13, 2011.

### I.  Background

On January 28,2008, petitioner, Monty Wilmoth, pled guilty to manufacturing a

controlled substance (methamphetamine) and possession of a controlled substance with intent to

deliver (marijuana), and was sentenced to 240 months' (20 years) incarceration in the Arkansas

Department of Correction ("ADC") with an additional 120 months' (10 years) suspended

imposition of sentence. See ECF No. 8-1. The Judgment and Commitment Order was filed on

February 1, 2008. (Id.).  As a result of the plea agreement the State agreed to dismiss Count 1

(Possession of Controlled Substance); Count 4 (Possession of Drug Paraphernalia) and to dismiss

the Petition to Revoke pending in case number 1999-608-2A. (Id.)  On September 9, 2010,

petitioner filed a motion to withdraw the guilty plea he entered on January 28, 2008. See ECF

No. 8-2. On September 23,2010, the Benton County Circuit Court issued an order denying

petitioner's motion, stating that the motion was untimely and that the court was without

jurisdiction to hear the motion. See ECF No. 8-3. The Petitioner filed the current Habeas Motion

on November 1, 2010 and has alleged Ineffective Assistance of Counsel.  ( Grounds 1, 2, 3, 5,

and  6) Prosecutor Misconduct (Ground 4), and that Arkansas Rule of Criminal Procedure, Rule

26.1 is constitutionally deficient (Ground 7).

## II.  Discussion

The first problem with the Petitioner's claim is that it is not timely because the Petitioner

entered his plea on January 28, 2008 but did not file the current habeas petition until November

1, 2010.

**Statute of Limitations:**

The Antiterrorism and Effective Death Penalty Act (AEDPA), Pub.L. 104-132, 110 Stat.

1214 (1996), established a one year statute of limitations for federal habeas corpus petitions

brought by state prisoners. 28 U.S.C. § 2244(d)(1). The limitation period shall run from the latest

of—

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

See 28 U.S.C. § 2244(d)(1)(A-C).

A prisoner whose petition is belatedly filed may take advantage of equitable tolling where extraordinary circumstances beyond his control make it impossible for him to file a petition on time or when the action of the respondent lulled him into inaction. *Jihad v. Hvass*, 267 F.3d 803, 805 (8thCir. 2001). The Supreme Court of the United States recently held that " § 2244(d) is subject to equitable tolling in appropriate cases." *Holland v. Florida*, --- U.S. ----, 130 S.Ct. 2549, 2560, 177 L.Ed.2d 130 (2010). "[A] 'petitioner' is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Id. at 2562 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408 at 418, 125 S.Ct. 1807). See also *Nelson v. Norris,* 618 F.3d 886, 892 -893 (C.A.8 (Ark.),2010). "The [application] of equitable [tolling] to relieve the strict application of [the] statute of limitations must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes." *Earl v. Fabian*, 556 F.3d 717, 722 (8th Cir .2009).

The Petitioner contends that "he does not possess a law degree; is not licenced by the state to practice law; does not have knowledge or experience in law, criminal procedures or rules" (ECF No. 12, p. 7). In general, neither a plaintiff's unfamiliarity with the legal process nor his lack of representation during the applicable filing period merits equitable tolling. *Turner v. Johnson*, 177F.3d 390, 392 (5th Cir. 1999). See *Cross-Bey v. Gammon*, 322 F.3d 1012, 1015-16 (8th Cir. 2003); *Kreutzer v. Bowersox,* 231 F.3d 460, 463 (8th Cir. 2000, cert. denied, 534 U.S. 863 (2001) (equitable tolling not warranted in case of unrepresented prisoner alleging lack of

legal knowledge or legal resources).

The Petitioner also argues that he did not receive information from his attorney in a timely fashion (See ECF No. 12, p. 11)  however  "[i]neffective assistance of counsel generally does not warrant equitable tolling." *Beery v. Ault*, 312 F.3d 948, 950 (8th Cir.2002). While an attorney's deliberate misrepresentations and attempts to mislead a defendant may warrant equitable tolling, an attorney's negligence or mistake generally does not. *US. v. Martin*, 408 F.3d 1089 at 1093-95; Beery, 312 F.3d at 951 (ineffective assistance of counsel, when due to an attorney's negligence or mistake, generally does not warrant equitable tolling). *Shaw v. Roper* 2009 WL 2600752, 4 (E.D.Mo.) (E.D.Mo.,2009).

This requirement (cause)  is not lessened by the fact that the petitioner may possess below-average intelligence or have no formal legal training. *See Vasquez v. Lockhart*, 867 F.2d 1056, 1058 (8th Cir.1988) (pro se status and lack of familiarity with American court system are not sufficient cause to excuse procedural default), cert. denied, 490 U.S. 1100, 109 S.Ct. 2453, 104 L.Ed.2d 1007 (1989); *Smittie v. Lockhart*, 843 F.2d 295, 298 (8th Cir.1988) (pro se status and limited educational background do not constitute cause excusing procedural default). *Cornman v. Armontrout*,  959 F.2d 727, 729 (C.A.8 (Mo.),1992).

The Petitioner contends there was no law library at the Benton County Detention Center however he acknowledges that such a  facility was available at the Arkansas Department of Correction but that he had difficulty with access there.  There is "no freestanding constitutional right to a particular number of hours in the prison law library," *Entzi v. Redmann*, 485 F.3d 998, 1005 (8th Cir.2007), cert. denied, --- U.S. ----, 128 S.Ct. 1714, 170 L.Ed.2d 522 (2008), and Petitioner's  alleged limited access to the library does not impact the court's determination that he

-4-

failed to act with the requisite diligence. *Earl v. Fabian* , 556 F.3d 717, 725 (C.A.8 (Minn. 2009) Petitioner offers no evidence that he was precluded from access to a law library for one year from the date he was sentenced.  The court also notes that the filing of a habeas petition does not require the petitioner to make any specific citations to legal authority.

The Petitioner also acknowledges that evidence of his alleged crime was put on at a petition to revoke hearing and that he informed his attorney "of the false testimony given by State Police officer Lori Whillock and parole offer Dean Persley" (See ECF No. 12, p. 11) but he claims it was not until he secured the documents from his attorney that he discovered the "severity" of the issues. (Id. p. 12).

No extraordinary circumstance or cause for the default has been shown by Petitioners except lack of knowledge and his own ignorance of the law which is no basis for granting relief. See *Jackson v. Ault*, 452 F.3d 734, 736-37 (8th Cir.2006); *Shoemate v. Norris*, 390 F.3d 595, 598 (8th Cir.2004) (prisoner's misunderstanding of proper procedure to file state petition); *Cross-Bey v. Gammon*, 322 F.3d 1012, 1016 (8th Cir.2003) (petitioner's lack of understanding of the law, and of the effect of his voluntary dismissal); *Baker v. Norris*, 321 F.3d 769 at 771-72 (limited access to law library and advance sign-up; ignorance of AEDPA's enactment); Gassler v. Bruton, 255 F.3d 492, 495 (8th Cir.2001) (delays in obtaining trial transcript). *Riddle v. Kemna*  523 F.3d 850, 858 (C.A.8 (Mo.),2008).

Even if the Petitioner's motion was timely it would be without merit because he failed to exhaust his state remedies.

**Failure to Exhaust:**

An application for a writ of habeas corpus on behalf of a person in custody pursuant to

the judgment of a State court shall not be granted unless it appears that—

    (A) the applicant has exhausted the remedies available in the courts of the State; or

    (B)(I) there is an absence of available State corrective process; or

     (ii) circumstances exist that render such process ineffective to protect the rights of the

applicant.  28 U.S.C. section 2254(b)

    Generally, a defendant must exhaust all available state court remedies before seeking

habeas relief. *Carney v. Fabian*, 487 F.3d 1094, 1096 (8th Cir.2007). "If a petitioner has not

presented his habeas corpus claim to the state court, the claim is generally defaulted." Id.

(quoting *Barrett v. Acevedo*, 169 F.3d 1155, 1161 (8th Cir.1999)). The default of the federal

claim applies even if the defendant's failure to exhaust results from the application of state law.

See *Lee v. Kemna*, 534 U.S. 362, 376, 122 S.Ct. 877, 151 L.Ed.2d 820 (2002). (Federal courts

will not entertain the habeas claim "if the decision of [the state] court rests on a state law ground

that is independent of the federal question and adequate to support the judgment.") (quoting

*Coleman v. Thompson*, 501 U.S. 722, 729, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).) "The rule

applies with equal force whether the state-law ground is substantive or procedural." Id. However,

even if a state procedural rule is generally sound, it will not be adequate to bar federal review,

unless the rule is "strictly or regularly followed." *Barr v. City of Columbia*, 378 U.S. 146, 149,

84 S.Ct. 1734, 12 L.Ed.2d 766 (1964). Further, a state procedural bar is adequate only if state

courts have applied the rule evenhandedly to all similar claims. See *Hathorn v. Lovorn*, 457 U.S.

255, 263, 102 S.Ct. 2421, 72 L.Ed.2d 824 (1982).

    In this case the Petitioner entered a plea of guilty on January 28, 2008  and judgement

was entered on February 1, 2008. (ECF No. 1 ).  After entering his guilty plea, Petitioner could

not appeal his convictions. *Seibs v. State*, 357 Ark. 331, 333, 166 S.W.3d 16, 17 (2004); Ark. R. Cr. P. 24.3; Ark. R. App. P. - Cr. 1.

Petitioner did not file a post conviction petition under Rule 37 of the Arkansas Rules of Criminal Procedure. For guilty pleas, such petitions are to be filed within 90 days of the date of entry of judgment. Ark. R. Cr. P. 37.2©. In this case since judgment was entered on February 1, 2008 the Rule 37 petition would have to have been filed by May 1, 2008.

The exhaustion doctrine, which is "principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings," *Rose v. Lundy*, 455 U.S. 509, 518, 102 S.Ct. 1198, 1203, 71 L.Ed.2d 379 (1982), generally requires that a claim of ineffective assistance be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default. *Murray v. Carrier*, 477 U.S. 478 at 488 (1986) . Further, if the ineffective assistance claim is defaulted, then a petitioner must demonstrate independent cause and prejudice excusing the default of the ineffectiveness claim before that claim can be asserted as cause in relation to a second, substantive claim. See *Hill v. Jones*, 81 F. 3d 1015, 1030-31 (11th Cir. 1996); (citing *Justus v. Murray*, 879 F.2d 709, 714 (4th Cir. 1990)). This is particularly true when the ineffective assistance claim arises out of a plea as opposed to a trial.

The Petitioner has failed to exhaust his state remedies or independent cause why the claim was not presented. Even if the Petitioner's claims were not barred by the Statute of Limitation or because of his failure to Exhaust Administrative Remedies his Petition, except for the speedy trial claim, would fail because his claims have no merit.

**Ineffective Assistance of Counsel:  (Grounds 1, 2, 3, 5 and 6)**

The Petitioner contends that his attorney was ineffective because he 1) Failed to Investigate, or to file a motion to dismiss or suppress; 2) failed to file a motion for independent testing; 3) failed to file a motion to dismiss; 4) Failed to file a motion to dismiss based on speedy trial, and 5) that his attorney failed to object to the charge and sentence as being excessive.

A defendant "faces a heavy burden" to establish ineffective assistance of counsel pursuant to section 2254. *Cox v. Wyrick* , 642 F.2d 222, 226 (C.A.Mo., 1981) To establish a claim of ineffective assistance of counsel, Petitioner must satisfy the two-part test set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, under the "deficient performance" component, he must show that his counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed [him] by the Sixth Amendment." *Strickland*, 466 U.S. at 687. Second, under the "prejudice" component, he must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. see also, i.e. *United States v. Ledezma-Rodriguez*, 423 F.3d 830, 836 (8th Cir. 2005)(post-conviction relief will not be granted on a claim of ineffective assistance of trial counsel unless the petitioner can show not only that counsel's performance was deficient but also that such deficient performance prejudiced his  defense) Also, to the extent that Petitioner's claims arise out the plea process, he must show a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. See *Strickland*, 466 U.S. at 688; *United States v. Prior*, 107 F.3d 654, 661 (8th Cir. 1997).

The "deficient performance" prong of the two-part Strickland test requires the movant to "show that his 'counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *United States v. Rice*, 449 F.3d 887, 897

-8-

(8th Cir. 2006) (quoting Strickland, 466 U.S. at 687) That showing can be made by demonstrating that counsel's performance "fell below an objective standard of reasonableness." *Wiggins v. Smith*, 539 U.S. 510, 522, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003)(internal citations omitted) There are two substantial impediments to making such a showing, however. First, "[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Rice*, 449 F.3d at 897 (quoting *Strickland*, 466 U.S. at 690, 104 S.Ct. 2052). Second, "[t]here is a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" Id. (quoting Strickland, 466 U.S. 689, 104 S.Ct. 2052); *Davis v. Norris*, 423 F.3d 868, 877 (8th Cir. 2005)("To satisfy this prong [the movant] must overcome the strong presumption that his counsel's conduct fell within the wide range of reasonable professional assistance.").

Even if counsel's performance was deficient, the movant must also establish "prejudice" to overcome the presumption of reasonable professional assistance. *Ledezma-Rodriguez*, 423 F.3d at 836; *Davis*, 423 F.3d at 877. To satisfy this "prejudice" prong, Petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different...a reasonable probability [meaning] a probability sufficient to undermine confidence in the outcome." *Rice*, 449 F.3d at 897 (internal quotations omitted) Thus, it is not sufficient for a defendant to show that the error had some "conceivable effect" on the result of the proceeding because not every error that influences a proceeding undermines the reliability of the outcome of the proceeding. *Morales v. Ault*, 476 F.3d 545 (8th Cir. 2007)(*citing Odem v. Hopkins*, 382 F.3d 846, 851 (8th Cir. 2004)).

**1) Failure to Investigate:**

The Petitioner's claim in this regard seems to be that his attorney failed to research certain facts about the night of his arrest.  The Petitioner contends that "Whitloct prepared an incident report which contain (sic) blatantly false statements concerning who entered the Petitioner's residence first, and who conducted the search, and who found items , and made determinations which lead to the arrest of the Petitioner." (ECF No. 1, p. 6).  The Petitioner does not state exactly what the "false" statements made by the police officers were but he has recited a great deal of material from various police incidence reports.

It appears that the Petitioner was on parole when law enforcement obtained information from an anonymous tip that the Petitioner was possibly "cooking and selling methamphetamine from his residence. (ECF No. 1, p. 2-3).  The Petitioner's parole officer was then contacted and a search was conducted of the Petitioner's residence.  The Petitioner seems to dispute who entered his premises on the night of his arrest and who specifically recovered what property. (Id.., p. 5). He also seems to contend that the items that were recovered were not in plain sight. (Id., p. 6).

The United States Supreme Court has held that parolees are subject to suspicionless, warrantless searches at any time. *See Samson v. California*, 547 U.S. 843, 126 S.Ct. 2193, 165 L.Ed.2d 250 (2006) (holding that suspicionless searches permitted by consent conditions of California parolees do not violate the Fourth Amendment). This court has recognized that "[t]he special needs of the parole process call for intensive supervision of the parolee making the warrant requirement impractical." Cherry v. State, 302 Ark. 462, 467, 791 S.W.2d 354, 357 (1990). See also *Tryon v. State*, 371 Ark. 25, 38, 263 S.W.3d 475, 485 - 486 (Ark.,2007).

The Petitioner admits that his attorney spoke to a witness to the search of his residence but that he did not talk to him about the search.  Mr. Faddis has provided an affidavit concerning

what he saw at the time of the arrest of the Petitioner but the affidavit does not state that he had not informed the Petitioner's attorney of what he observed.

As explained in *United States v. Harper*, 928 F.2d 894, 897 (9th Cir.1991) (citations omitted):  [T]he police may not use a parole officer as a "stalking horse" to evade the fourth amendment's warrant requirement. However, police and parole officers are entitled to work together to achieve their objectives; concerted action does not in and of itself make a search constitutionally infirm. The proper question is whether the parole officer used her authority to help the police evade the fourth amendment's warrant requirement or whether the parole officer cooperated with the police to achieve her own legitimate objectives.

The police in this case were certainly not "stalking" the Petitioner.  They received and anonymous tip and upon discerning the Petitioner was on parole they contacted his parole officer. The Petitioner's claimed happening of the events would not have affected his parole officer's right to conduct a search of his residence.  Even is his attorney failed to speak with Mr. Faddis about what he saw the Petition has failed to show this would have prejudiced him.  The court notes that Mr. Faddis does not state in his affidavit that he never spoke with the Petitioner's attorney about the night the Petitioner was arrested.  (ECF N. 1-7).

There is no showing that the Petitioner's attorney failed to properly investigate the case.

**2) Failed to File a Motion for Independent Testing**:

The Petitioner contends that had his attorney obtained independent testing there was "a very good likelyhood that the analysis would have substantially differed from that submitted by the Arkansas Crime Lab".  (ECF No. 1, p. 7).  The Petitioner does not state exactly how another test would have differed from the one performed by the Arkansas Crime Lab.  The crime lab

-11-

report showed that E-1A (light bulb smoking device) and E-11 (glass smoking device) tested positive for methamphetamine residue. Item E-1C (ziplock) tested positive for 1.6190 grams of methamphetamine, dimethyl sulfone. [1]  Item E-1E, E-1F and E-1G (ziplock) all tested positive for marijuana.  Items E-1B, E-1D, E-1H (ziplocks) all tested positive for dimethyl sulforne and contained a total of 42.984 grams. (ECF 1-5, p. 3-4). According to the U.S. Department of Justice Drug Enforcement Administration, Office of Diversion Control "METHYL SULFONE (also known as MSM, DMS, DIMETHYL SULFONE OR DMSO2) IS USED AS A CUTTING AGENT FOR METHAMPHETAMINE".  (See www.deadiversion.usdoj.gov).

  The Petitioner states that his attorney should have petitioned the court to have independent test run.  (ECF No. 1, p. 7).  The Judgment and Commitment Order notes that the Petitioner had private counsel and did not have the public defender or appointed counsel. (ECF No. 1-1).  The Petitioner has not indicated that he was without means to have additional test run if he desired.  It is apparent that at the time the Petitioner accepted the results of the Arkansas Crime Lab and correct and accurate.  There is nothing but speculation on the Petitioner's part that any additional test would have shown anything other that what the results of the Arkansas Crime Lab showed.  An attorney is under no obligation to undertake an unpromising investigation. *Harvey v. United States*, 850 F.2d 388, 403 (8th Cir. 1988).

**3) Failed to File a Motion to Dismiss:**

_____

  [1]DMSO2 (Dimethyl Sulfone) is an organic compound of extreme chemical and thermal stability. As such, it has been used as a high-temperature reaction solvent in elimination and nucleophilic aromatic substitution reactions. A wax-like solid at room temperature, DMSO also sublimes away easily, and deposits little decomposition residue.

The Petitioner contends that his attorney was ineffective because he did not file a Motion to Dismiss on the contention that there was insufficient evidence to support the claim of manufacturing.  He seems to contend that there were no such ingredients from which methamphetamine could be manufactured.

The Arkansas Statutes provide that:

> (1) Simultaneous possession by any person of drug paraphernalia and a drug precursor appropriate for use to manufacture methamphetamine or possession by any person of drug paraphernalia appropriate for use to manufacture methamphetamine that tests positive for methamphetamine residue creates a rebuttable presumption that the person has engaged in conduct that constitutes a substantial step in a course of conduct intended to result in the manufacture of methamphetamine in violation of § 5-3-201, conduct constituting attempt and this section.
> (2) The presumption may be overcome by the submission of evidence sufficient to create a reasonable doubt that the person charged attempted to manufacture methamphetamine. A.C.A. § 5-64-401

The Incident Report filed by officer Whillock described her contact with the Petitioner's parole officer who stated that he would do a home visit and asked for the assistance of the officer.  As a result of the home visit certain drugs and paraphernalia were found and the Petitioner was arrested. (ECF No. 1-4).  A state crime lab report confirmed that a methamphetamine residue was present on several items and that a chemical commonly used as a cutting agent was present along with marijuana. (ECF No. 1-5, p. -4).

It is impossible to imagine the basis for a motion for dismissal under the facts of this case. Had the defendant gone to trial the motion would have had to have had specific factual allegations to support the Motion to Dismiss and a motion simply stating that the evidence is insufficient is not adequate.  See Ark. R. Cr. Proc. 33.1  It cannot be ineffective assistance not to

-13-

raise a meritless argument. *Larson v. U.S.  905 F.2d 218, 219 (C.A.8 (Minn.),1990)*.

**5)  Speedy Trial:**

The Petitioner now claims that his attorney was ineffective because he failed to raise a speedy trial argument.

The Arkansas Rules of Criminal Procedure provide that:

> (b) Any defendant charged with an offense and incarcerated in prison in this state pursuant to conviction of another offense shall be entitled to have the charge dismissed with an absolute bar to prosecution if not brought to trial within twelve (12) months from the time provided in Rule 28.2, excluding only such periods of necessary delay as are authorized in Rule 28.3.

> c) Any defendant charged with an offense and held to bail, or otherwise lawfully set at liberty, including released from incarceration pursuant to subsection (a) hereof, shall be entitled to have the charge dismissed with an absolute bar to prosecution if not brought to trial within twelve (12) months from the time provided in Rule 28.2, excluding only such periods of necessary delay as are authorized in Rule 28.3.  Arkansas Rules of Criminal Procedure, Rule 28.1

It appears that the Petitioner was arrested on March 30, 2006. (ECF No. 1-2, p. 1).  The Petitioner did not enter a plea until January 28, 2008. This appears to be a total of 669 days from arrest to plea.  The Benton County Docket Sheet shows five entries of time charged to the Petitioner which total 232 days.

While, on its face, this argument appears to have merit the Petitioner was beyond the statute of limitations and failed to exhaust his administrated remedies. The State did not address the issue in their Response and the court has been provided with nothing but the Benton County Docket Sheet. (ECF. No. 1-2).  The court does note that the Benton County Docket Sheet did list a jury trial date for June 12, 2007, (Id., p.1) which would have been well within the speedy trial

-14-

time when the excluded time is taken into consideration.  There may be additional excluded time because the docket sheet also shows that the Petitioner was in the hospital in June of 2007 during the time his case was to have gone to trial. (Id., p. 2)

A habeas corpus proceeding does not afford a prisoner an opportunity to retry his case, and is not a substitute for direct appeal or postconviction relief. *Meny v. Norris*, 340 Ark. 418, 13 S.W.3d 143 (2000); *McDonald v. Norris*  2006 WL 1781495, 2 (Ark.) (Ark.,2006)

A contemporaneous objection to the excluded period was necessary to preserve the speedy-trial argument. See, e.g., *Gondolfi v. Clinger*, 352 Ark. 156, 98 S.W.3d 812 (2003). Pursuant to Arkansas Rule of Criminal Procedure 28.1(f) (2010), an appellant cannot assert a speedy-trial claim unless he moves for dismissal prior to a plea of guilty or a trial. *Barrow v. State* (Ark.App.,2010)

While the court is troubled by the "speedy trial" claim raised by the Petitioner the Petitioner was certainly aware of how long it took the State to bring him to trial. There was nothing occurring outside the defense or attributable to state action that kept the Petitioner from knowing and understanding the length of time it took the State to bring him to trial.  As noted above this does not constitute cause to excuse the timely filing of a habeas petition.

**6) Failure to Objet to sentence.**

The Petitioner contends his attorney was ineffective for failing to object to the sentence he received.  This claim is without merit.  The Petitioner entered a negotiated plea.  (ECF No. 1-1, p. 2).  His option was to reject the plea and go to trial, which he choose not to do.  It would have been senseless for his attorney to object to the very plea that had been negotiated.  As a result of the negotiated plea the Petitioner obtained the dismissal of two counts and a pending

-15-

revocation. (Id.).

**Police Misconduct**:  **(Ground 4)**

The Petitioner contends that police exercised misconduct because they merely took samples from his residence and photographed the balance of the drug paraphernalia and that the items of alleged paraphernalia were destroyed.  (ECF 1, p. 8).

It cannot be said that the police action was so egregious that it fatally infected the entire trial, rendering it fundamentally unfair and denying the Petitioner of due process. *Hamilton v. Nix*, 809 F.2d 463, 470, 470 n. 4 (8th Cir.1987).  The action the police took seems to be standard procedure when dealing with a suspected methamphetamine lab.  The inference that the destroyed item were negative for the presence of meth would be as strong if not stronger in the Petitioner's favor.  In this case the Petitioner elected not to go to trial and assert that contention but opted to enter a plea of guilty.

**Constitutional Claim: (Ground 7)**

The Petitioner now contends, for the first time, that the State of Arkansas' procedure for the withdrawal of a guilty plea is unconstitutional.  (ECF No. 1, p. 10).  The Petitioner also seems to assert in his Reply that the Arkansas Rule 37.1 procedure is also unconstitutional because any motion under Rule 37.1 must be filed within 90 days. (ECF No. 12, p. 7).

Before bringing his claims to this Court, a petitioner must have presented his claims in state court. *Baldwin v. Reese*, 541 U.S. 27, 29, 124 S.Ct. 1347, 1349, 158 L.Ed.2d 64 (2004). The Eighth Circuit has explained:  "A prisoner seeking a writ of habeas corpus from a federal court must first fairly present his claims to the state courts in order to meet the exhaustion requirement of 28 U.S.C. § 2254(b)." We have held repeatedly that a claim has not been fairly presented to

the state courts unless the same factual grounds and legal theories asserted in the prisoner's federal habeas petition have been properly raised in the prisoner's state court proceedings. We have also held that a claim is considered exhausted "when the petitioner has afforded the highest state court a fair opportunity to rule on the factual and theoretical substance of his claim." *Krimmel v. Hopkins*, 56 F.3d 873, 875-76 (8th Cir.1995) (citing *Forest v. Delo*, 52 F.3d 716, 719 (8th Cir.1995); *Keithley v. Hopkins*, 43 F.3d 1216, 1217 (8th Cir.1995); *Ashker v. Leapley*, 5 F.3d 1178, 1179 (8th Cir.1993)) (citations omitted). "In order to fairly present a federal claim to the state courts, the petitioner must have referred to " 'a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue" in a claim before the state courts.' " *McCall v. Benson*, 114 F.3d 754, 757 (8th Cir.1997) (quoting *Myre v. Iowa*, 53 F.3d 199, 200-01 (8th Cir.1995) (quoting *Kelly v. Trickey*, 844 F.2d 557, 558 (8th Cir.1988))). *See also Johnson v. Norris* 2007 WL 2343883, 6 (E.D.Ark.) (E.D.Ark.,2007).

"In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 2565, 115 L.Ed.2d 640 (1991). *Abdullah v. Groose* 75 F.3d 408, *411 (C.A.8 (Mo.),1996).

In this case the Petitioner argues that the State of Arkansas procedural rule 26.1 is not adequate because there was no time between when he plead and when he was sentenced.

-17-

Arkansas Rule of Criminal Procedure 26.1 sets the procedure for withdrawal of guilty pleas and reads in pertinent part:

> (a) Prior to pronouncement of sentence, the court shall allow a defendant to withdraw his plea of guilty or nolo contendere upon a timely motion and proof to the satisfaction of the court that withdrawal is necessary to correct a manifest injustice.

The record shows however that the Petitioner plead on January 28 but judgment was not entered until February 1.  Rule 26.1 has been interpreted by the Arkansas Supreme Court to mean that a motion to withdraw a plea of  guilty is untimely after the sentence is placed into execution. *Rowe v. State*, 318 Ark. 25, 883 S.W.2d 804 (1994); *Malone v. State*, 294 Ark. 376, 742 S.W.2d 945 (1988); *Travis v. State*, 286 Ark. 26, 688 S.W.2d 935 (1985). The trial court loses jurisdiction to set aside a guilty plea once it has been accepted and the sentencing has been completed. *Scalco v. City of Russellville*, 318 Ark. 65, 883 S.W.2d 813 (1994).

After sentencing, a motion to set aside a plea could be treated as one for post conviction relief under Rule 37, regardless of its title. *See Rowe v. State, supra; Garmon v. State*, 290 Ark. 371, 719 S.W.2d 699 (1986)*;  Shipman v. State*, 261 Ark. 559, 550 S.W.2d 424 (1977); *McCuen v. State,* 328 Ark. 46, 56, 941 S.W.2d 397, 402 (Ark.,1997).

The Petitioner in this case failed to even raise any complaint until September 9, 2010 when he filed a Motion to Withdraw Guilty Plea. (ECF No. 8-2).  The Circuit Court of Benton County entered an Order denying the Motion as untimely.  Time limitations imposed in Rule 37.2 © are jurisdictional in nature, and if they are not met, a trial court lacks jurisdiction to consider a Rule 37.1 petition. *Gardner v. State*, 2010 WL 3722056; *Harris v. State*, 2010 WL 2539753; see also *Maxwell v. State*, 298 Ark. 329, 767 S.W.2d 303 (1989).

Ninety days is sufficient procedural due process for a defendant to bring a complaint against his attorney.

### III.  Conclusion

Based on the above, I recommend that the instant petition be dismissed with prejudice for failure to demonstrate cause for his procedural default.

**The parties have fourteen days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

The court finds that Petitioner's Motion to Appoint Counsel (ECF No. 4) is hereby DENIED.


IT IS SO ORDERED this January 25, 2011


                                        */s/ J. Marschewski*
                                        HONORABLE JAMES R. MARSCHEWSKI
                                        CHIEF UNITED STATES DISTRICT JUDGE